You'll hear argument first this morning in Case 13-1032, Direct Marketing Association v. Brohl, Executive Director, Colorado Department of Revenue. Mr. Isaacson. Mr. Chief Justice, and may it please the Court. The matter before the Court today concerns the scope and application of the Tax Injunction Act, a law passed by Congress in 1937 for the purpose of preventing state taxpayers from circumventing state-established and available procedures for challenging state tax assessments, and instead going directly to federal court, seeking to invoke the equity powers of federal courts to enjoin the assessment and enforcement of state tax laws. The matter before the Court is one of statutory construction. In 2010, the State of Colorado passed legislation that had three components to it. It was directed at exclusively out-of-state retailers and required those retailers who made sales to Colorado residents and did not collect Colorado use tax to first provide a transaction notice in connection with each sale to a Colorado customer, informing them of their obligation to self-report the use tax to the Colorado Department of Revenue, and then on an annual basis to send a mailing to Colorado customers informing them of all purchases that they made during the past year, and again reiterating the requirement that they inform the Department of Revenue of their tax obligations. And third, for those out-of-state retailers affected by the law, to report to the Colorado Department of Revenue all of the customer transaction information that occurred during the past year for each Colorado customer. The case has an interesting procedural history, which I think is of relevance both to the Tax Injunction Act and also to the issue of comity. The Executive Director did not raise the Tax Injunction Act at the district court level and did not challenge the jurisdiction of the district court. When the district court entered a permanent injunction enjoining enforcement of the Colorado statute and it was appealed by the Executive Director, the Executive Director in her briefing to the 10th Circuit expressly informed the Court that the Tax Injunction Act and comity did not apply and were not a bar to the Federal Appellate Court proceeding to hear the case. When the appeal was made on a petition for certiorari to this Court, in her brief in opposition to the petition for certiorari, the Executive Director explained that the reason that she did not raise the jurisdictional issue below was because she favored having an expedited hearing on this matter. So that's the point. Scalia, Well, it often happens. It's a jurisdictional issue. So what's the point? Well, the fact that she didn't raise it is irrelevant. In fact, even if she didn't raise it here, we would have to raise it here, wouldn't  I believe that certainly for purposes of comity, Your Honor, the decision on the part of the government to seek the resolution of the matter in a court is — constitutes effectively a waiver of the comity question. Ah, the comity question, okay. You agree it has nothing to do with the principle question? No, I believe that under the Tax Injunction Act, if the State affirmatively seeks the relief from the court, that it can — it can proceed. And in this case, I think that it's especially — Would the State be seeking the relief? Yes. The State would be seeking to enjoin its own tax? What the State sought was a summary judgment. They affirmatively moved for summary judgment at the district court level. Well, but that just means the district court should throw it out. But that wasn't the request on summary judgment. The summary judgment was a request for the court to address the merits of the case, not to dismiss the case on jurisdictional grounds. You have raised the very question I started with, which is the waiver question. Is it your position that the TIA is a waivable protection? Is that what you're arguing? I think the issue may not be expressly one of waiver, but may be one of consent to agreeing to— Either way, consent or waiver, it probably is consent. If it is consensual, what you're suggesting is that the reason for the TIA is not jurisdictional in its traditional sense, but one based on comity that can be — that can be consented to. That's correct. And I believe, Justice Sotomayor, that the Court has made clear, including in the Fair Assessment case, Fair Assessment v. McNeary, that the Tax Injunction Act is really a codified subset of the law of comity, so that the TIA did not supplant or replace comity, but instead codified a certain element of comity. But the statute's addressed to the courts, and the statute says the courts will not enjoin State taxes. Now, how can that mandate to the court be altered by private parties? I mean, it seems to me it says that we just don't have the power, period. But you say the States can give us the power? I believe they can. But in addition to that, Justice Scalia, I think what is significant about the fact that the executive director took the position, both before the appellate court and before this Court in the opposition to the petition for certiorari, saying that this Court — that the reason why they decided to proceed was they wanted an expedited hearing, what I think it is remarkably reflective of is the opinion or the view of the executive director that the Tax Injunction Act does not apply to this situation. Well, that's fine. I can understand that. You say they used to think that it didn't apply. Now they're saying it applies. I agree. That's a good argument. But you're arguing much beyond that. You're arguing that it doesn't matter anymore because they once said that they wanted the court to decide it, even though the court had no power to decide it. Right? I mean, that's a different argument. It's that one that I criticize. If you want to say the States' argument seems weaker because they've changed their mind, that's fair enough. Well, I think the States' argument is weaker not merely because they changed their mind, but because I think they made a studied decision that the Tax Injunction Act by its terms, and what the Court has presented with is an issue of statutory construction, as construed by the executive director, to the point of informing both the appellate court and this Court that the Tax Injunction Act was not a jurisdictional bar. I think that that was reflective of the fact that the position of the State, especially in the absence of any precedents supporting the very broad position that the Tenth Circuit assumed on its own, that the State's position was not a jurisdictional bar. Ginsburg. Mr. Isaacson, before we get to the nub of this question, we have your position, the fact that it is a restriction on the Court's jurisdiction, but you recognize that the TIA does cover regulations that require an employer to report an employer's employees' taxable income. That's a State reporting requirement. And you recognize that that's covered by the TIA. So this is another information reporting that will enable or facilitate the State's collection of its tax. So what's the difference? Why is it that the one comes under the TIA and not the other? So I believe, Justice Ginsburg, those cases that you're referring to, like the Blandgeer case and the Sipes case, are situations in which it was the taxpayer that was seeking to prevent that information reporting from taking place. And it is clear that in those cases it was doing so for the purposes of anticipating a tax assessment and attempting to prevent the issuance of that assessment by depriving the director of necessary information. Suppose it weren't the taxpayer? I mean, suppose a State has a form that's equivalent to the Federal W-2 requiring employers to say how much wages have been paid. And suppose the employer itself challenges the use of that form. What do you think the result is in that case? In that case, I believe that the Tax Injunction Act would bar – the Tax Injunction Act would not bar Federal court jurisdiction. I think that that would be the classic situation that was described by the Court in Levin v. Commerce Energy, where – Scalia, you're not saying that there are situations in which it applies only to taxpayers? No. There are situations in which there may be proxies that are acting on behalf of the taxpayer, so that you could have a situation, for example, where you have a successor in interest to a taxpayer that may be bringing the claim. But in all of those situations, there are ones in which – and this is the case law regarding the Tax Injunction Act, but there are all situations in which the taxpayer or a person acting on behalf of the taxpayer is bringing an action. Scalia, what difference does it make? My very point, so what? Go ahead. The question is whether the word collection includes an injunction that makes it more difficult for the State to collect the tax. And in the case that Justice Ginsburg brought up, the injunction, because it would stop the employer from telling the State how much has been earned, would make it more difficult to collect the tax. In this case, the injunction, by stopping sellers from telling the State how much the Colorado citizen has bought, would make it more difficult for them to collect the tax. So if collection includes in the one case an injunction that makes it more difficult to collect an income tax, why doesn't it in this case include an injunction that makes it more difficult to collect a use tax? The point was they are identical conceptually. Now, I don't care whether it's the – who brings the suit? In terms of the word collection, they seem identical. Now, what is your response to that question, which is what I think was being asked? So, Justice Breyer, I think you have to read the word injunction, which is the first set of operative words. It doesn't say anywhere injunction. What the word is, enjoin, suspend, or restrain. And I get – I'm totally with you on those. But what you are enjoining, suspend – you are enjoining something. There is an injunction that says the State cannot enforce its provision requiring out-of-State sellers to report what Colorado customers buy. I don't see how you can deny that's an injunction. I think you could deny that it enjoins the collection of a tax. But to do that, you will have to go right back to the question that Justice Ginsburg asked and tell me how to distinguish the two cases she mentioned, this one and the case where it's reporting income by an in-State citizen. So the words enjoin and suspend operate on the words assessment, levy, and collection. Yeah. And as this Court ruled in the – in the Hibbs case, in which, even though the Court was divided on the issue of the meaning of the term assessment, which is the key issue in that case, that the assessment is the recording of liability. And this Court also ruled in the Hibbs case that assessment triggers collection. So in the Tax Injunction Act, the word collection is referring to actions of government officials following the assessment of the tax. And the injunction that Your Honor is referring to is one which is relating to the actions of third parties, private parties, not the public officials. So your point is that if, in fact, there is in Colorado a law, somewhat like Federal law, that says all employers must report to the State the wages that in this Boulder area or Denver we pay our employees, and someone tries to enjoin that law in Federal court, you are saying they can do it, right? It doesn't matter whether it's use out of the State or employment within the State, and we simply have to accept that consequence because of Hibbs. Well, in the W-2 concept, which Justice Kagan was referring to, there's a tax liability responsibility that the employer themselves have. So that I think that a court might well conclude that because of the obligation of the State. 1099s. In that situation, I think if it's a third party, that third party is an outsider, as this Court defined outsider, a individual whose own tax liability is not of relevance. And I think in the context of the Tax Injunction Act, it's been consistently been interpreted that way, that all of the cases that have been cited by the executive director, whether those cases address specifically the tax assessment or some liability are all cases that were brought by a taxpayer, and the issue related to what that taxpayer's liability is. Alito, what about the Alexander v. Americans United case under the Anti-Injunction Act? That was not — that was a third party suit, wasn't it? An organization was — wanted a determination that contributions would be tax deductible. Well, I think in Americans United, the plaintiff in that case was, one, determining its own 50C status, and so it was interested in what its own status was. But I think in addition to that, you had an underlying tax statute that was at issue, the issue concerned the question of eligibility for tax-exempt status. What I think is significant in this case is not only the fact that you have an obligation that is not borne by taxpayers, but is imposed exclusively on non-taxpayers, but it also is not a tax statute. It's a statute that's— Kagan. Where do you get, Mr. Isaacson, this idea that the plaintiff has to be the taxpayer? Because certainly the text of the statute does not say that. The text of the statute speaks to what kinds of remedies a court can give. It does not speak to what kind of plaintiffs have to bring the lawsuit. I think the discussion of the Tax Injunction Act in the Levin case, Levin v. Commerce Energy, where a group is identified as outsiders, individuals or entities whose own tax liability is not of relevance to the — to the case, is the source of that authority. And in this case, that's exactly the situation that you have, that we're not talking about the tax liability of out-of-State retailers. Their tax liability is irrelevant. Furthermore, those out-of-State retailers are not challenging anyone's tax liability, which I think is also a distinction from the American United's case, where they were concerned about the tax liabilities of contributors to their organization. Kagan.  Kagan. I guess I don't — what I don't understand about your statutory argument, I mean, it seems a kind of natural thing for somebody to say, suppose it's like we're going to all have pizza tonight, and we're going to take up a collection to buy the pizza, and I assign one of my clerks, go collect the money for the pizza. So what that clerk is going to do is he's going to figure out who it is that's going to owe the money, right? Who's going to partake of the pizza, so who owes the money? And then, you know, maybe he's going to send an e-mail to those people, and he's going to say, you owe this money for pizza. And then if no — if somebody doesn't pay, he's going to identify the delinquent and say, really, you owe this money for pizza. So that's all part of the collection process, isn't it? I mean, basically identifying, informing the people who have to pay, informing the people who have to pay, and identifying the people who don't pay, and the amounts that they owe. I think two responses, Justice Kagan. One, the terms collection, assessment, levy, and collection are terms of art that have particular relevance in tax parlance, just as the terms enjoin, suspend have particular relevance in regard to the Court's equity powers. So in this situation, what collection is referring to, and it's consistent with how the Internal Revenue Code treats the term collection, it's the action that is taken by tax authorities, by government officials, after a determination of tax liability has been made, after notice has been given to the taxpayer of their property, and then recover the amount of money which is owed. The fact that there may be information which is of use, of relevance, that may precede the collection activity of the government, doesn't convert those preliminary activities into collection itself. So I think what is really critical on this issue is that collection is only as the money changes hands, that that's the only thing that constitutes collection? No. What I'm saying is that collection follows assessment, and after the assessment has occurred, it is the activities of government officials in order to recover money from taxpayers. So you're saying it's just like garnishment or things like that? It has to be focused on a specific amount that's already been calculated and the taxpayer has not turned over? It certainly goes far beyond garnishment and would include any activities on the part of government officials once a taxpayer's liability has been determined. So you've got to know that he or she owes $1,482 because they've done the calculations and they haven't paid that over? Yes. As this Court decided in the Hibbs case, in the decision written by Justice Ginsburg, it's assessment that triggers collection so that they fall in sequence to each other. I'm not sure what you have conceded. Do you acknowledge that if there were a State law which required in-State sellers not to collect a tax, but just to advise the State Revenue Service that someone has purchased an item on which tax is due, would you acknowledge that that could be enjoined, that someone could bring a suit saying I'm not the taxpayer, this is not the assessment or collection of a tax, and therefore a suit will lie for me to say that this is an unconstitutional imposition upon me? Would that suit lie or not? Well, I'm not sure what the basis, the underlying basis for Federal jurisdiction would be in the hypothetical that you're talking about. Well, it's a Federal constitutional violation. I think if it's a Federal constitutional violation, the Tax Injunction Act would not be a bar to it. Now, I think in that situation, you may have comity concerns that are significantly different than the potential comity concerns in this case. So the only thing that would make the States able to do to get information about tax liability without being sued in Federal court is the fact that the person from whom the information is sought is liable for the tax if the seller has to retain the sales tax. Well, as I pointed out, there may be circumstances in which you have a third party that is effectively acting in regard to a taxpayer's liability. So I think you have two convergences, Justice Scalia, that I think are important to the resolution of this case. I don't know what you mean by a third party acting in regard to. It could be a successor in interest, for example. Oh, of course. But I think you have two convergences here that would not necessarily be present in the hypothetical that you present. One is you have a non-taxpayer that is one of the elements of it, but also that that non-taxpayer is not disputing anyone's liability. So, you know, I think one of the issues that was present in the Hibbs v. Winn case, and I think it was part of the concern that Justice Kennedy had in his dissent in that case, is that you were still having a so-called outsider that was interested in the tax liability of another party. In the current case, the issue of tax liability of the customers of the out-of-state retailers is not being contested. The out-of-state retailers not only are not disputing any issue relating to their own tax liability, there is none. But they are also not claiming that their customers are not subject to use tax. They are not challenging. But the State's not interested in just liability. It's interested in collecting. And the statute talks about collection. Absolutely. So it seems to me that that's just not responsive to the issue. No, I agree with you, Justice Kennedy, that the — in this case, the direct marketing association members are not challenging the authority of the State to pursue collection of tax revenues from customers. They're not contesting them. But we're talking not about what you're challenging. We're talking about what the State's interest is. The fact that the State has an interest in this information, and much of the briefing that the State has presented emphasizes the importance of this information to their tax system. But the fact that — But it's importance for a reason. It's importance to enable them to collect. Essentially, the State is saying we're not going to be able to collect this tax unless we do these things, unless we tell people that they, in fact, owe the tax, and unless we have a mechanism to make sure that people who don't pay the tax are identified. And that's what all these forms are all about. It's about collecting a tax that most people do not pay. I'm not sure that the State is saying they're not able to collect the tax absent this information. In fact, the anticipated revenue on the revenue note that went with this was $12.5 million. It was less than two-tenths of 1 percent of the total State revenues. But assuming for the moment that the State does believe that this is important information, valuable information, that doesn't mean that it fits within the language of what was excluded by the Tax Injunction Act from Federal collection regulations. But wouldn't you agree that in any case in which a government goes about collecting a tax, it has to say how are we going to collect this tax? And this is just this State's answer to the how are we going to collect this tax. Well, what we're going to do is that we're going to inform people that they owe the to make sure that the delinquents pay up. That's how we're going to collect it. I believe the issue that the Court is confronted with is in the construction of this statute in regard to what the meaning of the word collection means in the context of being associated with assessment, levy, and collection. What is the act of collection? Not what is the interest of the State in being able to pursue collection, but what is the act of collection that is enjoined? And I think that is what is determinative of whether there's a Federal forum to be able to address that issue. If there are no further questions, Mr. Chief Justice, I'd like to reserve the remainder of my time for rebuttal. Thank you, counsel. Mr. Domenico. Mr. Chief Justice, and may it please the Court. Justice Kagan, this injunction has deprived Colorado of the tool provided by the State legislature under State law for the assessment and collection of these taxes. Am I correct that Colorado is the only State that seeks to do this with respect to out-of-State sellers? Colorado is the only State with this precise combination. That's amazing. If indeed this is, you know, a proper operation, why wouldn't all 50? In my experience, you know, if it moves, you tax it. And I cannot imagine that the other States have not piled on with this thing if it is so essential to the tax system and if there are no problems with doing it. My goodness. Well, of course, the question on the merits is whether there are, in fact, other problems with it. No, I understand. But the fact that it's a one-of-a-kind gives me some pause. This is certainly a very important case because I have no doubt that if we come out agreeing with you, every one of the States is going to pass laws like this. Well, I would agree with that. And all sellers will have to be providing this information. Certainly, I think, if we ultimately prevail on the merits, that's true. The question is whether that challenge on the merits goes through Federal or State court. Let's assume I am a not-for-profit corporation, an unpopular not-for-profit corporation that has members who don't want their identity known because hurtful things will be done to them. And I make a sale which would be exempt from Colorado's laws if, indeed, it was made by a not-for-profit organization to one of its members. And Colorado demands from this organization the names of its members. And you tell me that cannot get into Federal. I'm claiming a First Amendment objection to turning over the names of my members. And you tell me that cannot get into Federal court. Justice Scalia, I'm telling you that cannot get into Federal court. That is a part of this, a central part of the State's tax system. It may very well be unconstitutional on the merits. It can't be that central if no other State has it. How central can it be? Well, Justice Scalia, the use tax is obviously a large and growing portion of the tax base that States should be able to collect. And Colorado has been unable, except in a minuscule percentage, 0 to 5 percent are the estimates of who actually pays this tax, are paying now. Well, I'm a little bit confused. In the normal tax situation, meaning my employer, the U.S. courts, removes taxes from whatever area I declare is my residency. That's right. All right. Is my employer required to send that information to the State government? I don't think it is. I think I'm required to send my W-2. Well, it comes indirectly. The States typically get that information from the IRS. So it is an obligation. It's just sort of, I think, indirect. So there's no, okay. That's what I thought. Now, some employers have to withhold taxes. Correct. For certain entities in which they're resident or working. Right. And so that's because of jurisdictional powers. The State can control someone who's within their jurisdiction. Right. So that makes sense to me. What doesn't is, how can we apply the TIA to an entity that has no direct responsibility to you? I mean, and you have no jurisdictional control over it. I mean, there's a presumption in the TIA that collection, assessment, et cetera, is going to be against an entity that owes you something. Well, the — I don't think that the TIA says that. The TIA talks first about enjoining, restraining, or suspending. Then it talks about — How are they enjoined? You can collect everything you want against your taxpayer over your having jurisdiction. So how are we restraining you from — we're not giving you information, but this is the way we're restraining you from collecting that tax. It is stopping us from using the tool, the means provided under Colorado law, for assessing and collecting that tax. Let's — I'm sorry. Go ahead. Let's assume a State law that gives the State taxing authority a lot of money for new computers, and somebody challenges that law on some State ground, or whatever it is. Would that challenge — on some Federal ground, would that challenge not be able to be brought in Federal court because the computers are going to help the tax service to get more delinquent taxpayers, and therefore you are restraining the collection of taxes? I don't think so, Your Honor. Why not? The circuit courts have addressed these types of questions much more often than this Court have, and they've uniformly — at least eight of them that have addressed that kind of question have drawn essentially the same line. It's the one expressed in cases like Kemlon and Judicial Watch. And the question they ask is, is the action you're attacking, is the purpose of that action to culminate in assessment or collection of taxes, and is the likely effect to culminate in what — That is a very narrowing thing. I mean, Henry Friendly some years ago said, of course, you can use the term collection to refer to any method of helping to secure payment. But Congress was referring to methods similar to assessment and levy that would produce money or other property directly rather than indirectly, the reason being once we start down your road, there's no stopping place. GDP consists of about $16 trillion. It's very hard to think of even one of those trillion dollars that you couldn't figure out passed through somebody's hands who owed a tax and then later went into somebody else's hands. And it would help the State or the Federal Government to know from that second or third person how it got the money from the first person's hands. That's true of houses. It's true of food. It's true of in States that tax food. It's true of this desk. It's true of everything you can think of. And therefore, there will be, I mean, ruled out, unless we're going to start line drawing. And I don't know what lines to draw. Therefore, said Henry Friendly, let's not. Let us read collection to mean what it means in context, namely what Hibbs suggests the three phrases mean. Read them together. That, I think, is the strongest argument against you. And therefore, I'd like to hear your response. Justice Breyer, I agree with you. That's the strongest argument against us. This injunction makes it impossible for Colorado, under the State law that the legislature has enacted, to do any form of assessment, any form of collection on hundreds  Breyer, you can't ask your citizens the same way that the Federal Government asks us? Pay. That's their polite way of saying it. And by the way, if you fill out your form incorrectly, depending upon your state of mind, you may discover you are in prison. Now, that seems to be a not perfect way of doing it, but it does tend to encourage people to pay the taxes that they believe they owe. Justice Breyer, indirectly at least, Colorado makes the same statement to its citizens about this tax, but it can't determine who owes the tax, and it can't determine how much they owe, and it therefore I can tell you the truth. That would be nice, yes, but that's not Well, this is the West, I understand. I don't mean, I'm from the West. Can it make the foreign seller collect the tax? Not under Quill. Well, that's sort of strange. It can't make them collect it, but it has the power to compel them, non-state citizens, out-of-state people, provide the information, assist in the State's collection of the tax. I don't know why the one and not the other. Well, this is exactly their argument on the merits. But that is exactly why this violates the Tax Injunction Act. Could we Can I ask you a question about where your argument might lead? I think you acknowledged earlier that if we hold that your statute cannot be challenged under the Tax Injunction Act and it's ultimately determined to be constitutional, this would be very attractive for all the other States to copy. So let's suppose that that happens. And so now every State has a law like this, and every State – and there are many different variations in the forms. Maybe there are 50 forms that have to be submitted to State tax authorities. And let's say I start up a small business and I am selling a few thousand dollars worth of goods via the Internet to people from all over the country. Now, I will have to submit potentially 50 different forms to all of these States reporting that somebody in South Carolina purchased something from me that cost $23.99. Now, I know you have a requirement that it has to reach a certain threshold, but I don't see when that's just something that you've chosen to do. But that's where this all could lead, couldn't it? Justice Alito, that is where this could lead. And that's a slightly more detailed version of their argument on the merits. But the point of the Tax Injunction Act, of course, is that that's a challenge that has to be brought in State court. For example, Quill itself, the case that kind of the merits turn on, was a State court case that proceeded through, I believe, North Dakota's States. This Court, to the extent it believes that's a constitutional problem that you just identified, would have the right to or would have the power to hold it to be a unconstitutional violation. In fact, it's worth noting that the plaintiffs have availed themselves of Colorado courts to make just this challenge and already have an injunction for those based on those reasons. Scalia. You know that we accept a minuscule, minuscule percentage of appeals from State Supreme Courts. And as a practical matter, these challenges in State Supreme Courts, if they're ruled in a manner that violates Federal law, they're not going to come up here. Ninety percent of them aren't going to come up, more than 90 percent. So it is important that it begin in Federal court, especially when what is at issue is the selfish State's assessment and collection of taxes. I mean, there's a real incentive on the part of the State government, which includes the State courts, to, you know, to find the tax not paid. Justice Scalia, that's an argument that Congress has rejected in enacting the Tax Injunction Act. Well, for collection, yes. Assessment and collection of the tax. Mr. Domenico, you don't dispute that what Congress had in mind when it passed the Tax Injunction Act was the proposition that States that have a system, taxpayer, you pay now, you sue for a refund later. It was that scheme that the Tax Injunction Act was meant to shield, so the taxpayer couldn't say, I'd rather pay later. You pay up front, and then you sue for a refund. That was what was in the front of Congress's mind. You don't doubt that, do you? That was the paradigm case, I think, is an accurate way to describe that. That's going to be the most common form of a case that would raise these issues. But what Congress wrote was a statute that, by its terms, is broader than that. Well, Congress wrote a statute with terms that seem most naturally read to have a technical meaning. Restrain, suspend, and join. Assess, levy, and collect. Those are not the terms that one might use if one were speaking, quote, colloquially. Let me come back to Justice Kagan's pizza example. So her clerks are collecting money for pizza to be had at night, and let's say the Chief Justice says, this is fine, but you may not use court e-mail to try to collect this. Now, would you say that the Chief Justice has restrained, suspended, or enjoined the collection of the pizza money? You might say he's made it a little bit harder, maybe he's interfered with it, but would anybody naturally use those technical terms? Well, in the pizza context, I think it would be unlikely to use those technical terms, but I think in the tax context, if someone told the Department of Revenue, you may not assess or collect these taxes, I would be very nervous about advising them, nonetheless, to proceed with enforcing these laws, because by their natural terms, the way they're used, this is part of the assessment process. This is a means. It's only purpose. As everybody agreed, the district court, the plaintiffs, everyone agreed the sole purpose of this law was to reach the point where we could assess and collect. Well, let's say we're back in, we're in the pre-internet era, and I order something over the phone from an out-of-state vendor. So this vendor is going to mail it to me across State lines. And let's say this particular vendor is somebody who feels very strongly that everybody ought to pay taxes that are due. So this vendor voluntarily, once my order has been placed, says to me, now, I'm going to ship this to you in your State, and I'm not going to charge you, I'm not going to make you pay sales tax in my State. I just want to remind you that you are obligated under the law of your State to pay use tax. Would you say that that vendor has assessed the use tax? The vendor has assessed it simply by informing them that they have to pay the tax? Yes. Yes. I wouldn't say they've assessed the tax, no. Well, that's what you're arguing here, isn't it? I don't think so. That's exactly what happens. No. The State's law is the means by which it can assess the tax. If it doesn't get that, I would say this. If the vendor said, do not pay this tax, do not tell Colorado, they're the opposite version, they're someone who objects to the tax, and they said precisely the opposite, then I would say that they have interfered with, they have restrained, suspended the assessment and collection of that tax. And that's what's going on here. You would say that by saying that, making that illegal statement, they've enjoined the payment? No. I wouldn't say it, but I say they have restrained. They have restrained it? Yes. But individuals don't have, obviously, the company doesn't have the power of an individual. Restrain means impede. Well, what the Court has said is. Restrain is synonym for impede. I thought restrain means to stop. You restrain somebody. You prevent that person from doing what he wants to do. But you're using it to mean, you know, whatever impedes the collection of the tax. It doesn't make it impossible. It doesn't stop it. It just, it just impedes it. The Court has used the words interrupt the assessment or collection of the tax to the practical effect of suspending it during the litigation. I don't think there can be any doubt about that. Well, so what, let's say the law says not only do you have to notify the people at the point of sale on the Internet, but it must be in, you know, inch high type so they're sure to see it. Is that okay? Because that makes it, impedes the collection because, or presumably they can't just put it in the tiniest little type at the bottom of the page. If the challenge is only to the size of the font requirement. Well, I mean, you can make light of it if you like, but they're more likely to notice it if it's there glaring them in the face as opposed to a little footnote at the bottom along with all the other. And there are regulations of that sort with this law, and that's what I'm. And that restrains the collection of the tax? If you don't, it restrains the means of assessment and collection of the tax under State law. This Court has referred repeatedly to the means, the methods, the modes, the system of assessment and collection dating back before the existence of the Tax Injunction Act. The Court referred to the modes. It was of the utmost importance, the Court said in Dow v. Chicago, that the Federal courts would be restrained from interfering with the modes of collection of a tax. That would restrain the mode under State law, the method, the means under State law of collecting the tax. Your argument is at least in tension with this Court's decision in Hibbs. So what is your best argument for why Hibbs doesn't control? Hibbs says this statute is about stopping taxpayers from avoiding the obligation to pay the government. And here we have a third party, not a taxpayer. But, Justice Ginsburg, I think what Hibbs was about was that that case did not interfere with the collection, the State's revenue collection mechanisms. The text of the Act, as this Court recognized, Justice Alito pointed out, the text of the Act on this point is identical, essentially, to the AIA. The Court in Americans United flatly rejected the argument that the AIA only applied to taxpayers, and it would be contrary to the history of the Act as well and how this Court has applied it and how the lower courts have applied it. Well, I'm not quite sure that you're addressing the essence of Hibbs. Hibbs defined the terms collection, assessment, et cetera, very narrowly, much more narrowly than you are right now. The difference that Justice Breyer was pointing to is the important one. You haven't answered how you can get to where you're going unless we disavow the narrow definitional reading that Hibbs gave to those three issues. I don't agree with that, Justice Sotomayor. The Court can simply recognize that suspending, restraining, and joining the methods of reaching, getting to the point of being able to plug in the numbers into the calculation. The State right now, when it makes the calculation that is an assessment, has nothing to put into two of the three variables. It can't put in the identity of the taxpayer, and it can't put in whatever the base is to apply the State tax law. This law will directly provide that information. It's the means of doing an assessment. It's the means. Let's posit a State law that requires all taxpayers to use only a single bank because it will be one bank named by the State, because it will be easier to levy upon all accounts. It makes it a lot easier for the State. They just go to that bank, take your bank account, okay? This is challenged as being a taking, okay? And the party tries to get into Federal court with that Federal challenge. Not possible, right? So the question is, is the purpose of that law, the assessment of the State tax law, is to prevent the collection of the State tax, and therefore, this suit has to be brought in State court, because this facilitates the collection of the State tax, and therefore, the State court has to be able to provide the assessment or collection. Scalia, that's the whole reason. Yes, it is. That's the whole reason. And it's the likely effect. If the whole reason that that law was passed was to improve the assessment or collection of the tax, then it would been the Tax Injunction Act would allow that challenge to be brought in State court, that the State courts have proven themselves able to. I mean, the worst-case scenario under any of the parade of horribles that the plaintiffs have brought forward is that the cases go to State court. This Court has recognized that. Well, you're disavowing, then, our pointing to in Hibbs the Second Circuit case. You're saying if the purpose of the law, a law that says if you don't pay your taxes, we're going to imprison you, that can't be brought to Federal court. I think the purpose is to ensure that you pay your taxes or to encourage you to pay your taxes. I think the Court, I think the Court looking at Wells can make a distinction based on the fact that in that case the State had given up on assessing or collecting the taxes. The facts of that case were that the State was no longer trying to assess or collect taxes from Mr. Wells. It was instead had given up and was punishing him for failing to comply with the law. I think the Court could separate penalties when a case like that comes up. Sotomayor, I don't want to miss the question that we started at the beginning of your brother's argument, which was the consents below issue. Right. Why was it that until your briefing here you had been arguing that the TIA did not apply or were not challenging the analysis by your adversary? It was just, it was a mistake. Knowing what we know now, we should have argued it. That's all I can say. I guess Federal law is the same because we have the, what is it, the AIA, the Anti-Injunction Act. So Congress tomorrow passes a law, I'm not saying they would, but that anyone who hears of anyone paying anyone else any money for any service or good shall immediately report it to the nearest civil, nearest IRS office, and if they fail to do so, it's a crime or we'll seize all his assets. You wouldn't be able to bring that suit for an injunction in Federal court on the ground that it's a bit extreme. You'd have to wait and pay this, whatever you're supposed to be. You're not supposed to pay, you just have to do it and then hope somebody challenges it. Well, Justice Breyer, under the AIA, the challenge provisions are fairly complicated. But if a State were to pass that. No, no, I'm not interested in the State now. I'm just interested in why it might be that it is wise for Henry Friendly to narrow this word, collection, because we knew not where we go when, in fact, it gets too broad. Well, Congress has used the word collection, assessment, levy, and collection. This Court has always interpreted them very broadly in the context of the Tax Injunction Act, at least as broadly as in the context of the Anti-Injunction Act. And Congress's determination is that the collection of taxes is so important that that's the process that has to be followed. It seems to me that you have to distinguish some of the hypotheticals, say, from Justice Scalia about the computer being used to expedite tax collection or the bank by saying that what we have here is an information device that's so closely linked in the ordinary course to the collection of taxes that is collection. But I don't know how you would formulate that test, and I know it's not going to be easy, and I'm not quite sure how you get it out of the statute. Well, so the lower courts, again, have had more experience with this, particularly under the AIA. The D.C. Circuit, for example, used the word inextricably linked to the assessment and collection process, I think, in the Seven Sky decision. You could certainly adopt some sort of an attenuation principle where it's not. But don't you have to do that in order to distinguish those hypotheticals? That's my question. Well, certainly, yes. I mean, in this case, though, it's very easy. This is a very common form of information reporting. It's simply been imported from where it's more familiar, the income tax forum, into this use tax forum. It's a very common. They are the party to the transaction. They typically, if they're in State, would actually be collecting the tax themselves. Before your time expires, what's your best formulation of the connection that you think is required? I think the lower courts have said two things. One, the purpose, again, has to be assessment and collection. It can't just be incidental or a collateral effect. And the likely effect has to culminate in assessment or collection. That's the language most of the circuit courts use. And the likely effect culminating in collection just seems to mean that it benefits collection in some way. So there's a case cited at Bell South that addresses this and says if the law is something that doesn't interfere between the relationship between the taxing authority and the taxed individual or entity, that then the link may have been broken. This law clearly, this injunction, interferes with the relationship between Colorado and the tax because it prohibits us from getting the information about who they are and how much they owe. No, it doesn't prohibit you from doing that at all. It prohibits us from using the tool provided under State law. Well, yes, it prohibits you from doing what you want to do, but the whole question is whether you can do it. It doesn't prohibit you. The relationship between the State and the taxpayer is between, you know, John Q. Public and the State. And John Q. Public owes this money, and the way you get it from him is the same way you get other taxes that are due from him, or you can. You just want to have a more efficient way. But it doesn't interfere with that relationship. Well, it does. I would dispute that it doesn't interfere with the relationship. Certainly, if the Court is going to say that Federal courts are the proper forum for telling States which tools or means they can use to assess or collect the tax, then, then we shouldn't prevail. But if the Tax Injunction Act is about anything, it's about leaving it out of Federal courts. Ginsburg. But that one, the question, this is just a forum question, right? That's right. You can see in Federal court, the question wouldn't be the one you pose. The question would be the one on the merits. Does this violate the Commerce Clause? Well, that question, under the AIA, or under the TIA, has to be in State court, where it is right now being litigated by the same parties, the same claims. So, yes, that question has to be decided in State court. Thank you, counsel. Mr. Isaacson, you have four minutes remaining. Thank you, Your Honor. I'd like to address three issues that have been raised by Mr. Domenico. One of the, I think, primary concerns is the boundless nature of the test that has been suggested by the Executive Secretary. And I believe that it's boundless in two regards. One, it could reach any third party. It can reach common carriers. It could reach Internet service providers. It could reach credit card companies. It could reach any party that the State maintains has some information that would be relevant to assist it, to facilitate it in the collection of taxes. There is no limitation on what that scope may be, even though that third party itself may not have its tax liability at issue, nor may it have any interest in any other party's tax liability. In addition to that, the definition of collection, as presented by my brother, would reach any activity that might facilitate, not only any person, but any activity that might facilitate. So there really is, again, no limitation on what the kind of request for information might be that could be imposed by the standard that has been suggested. The Tax Injunction Act simply was not intended to provide for that kind of expansive, unbounded reach. Much to the contrary, as Justice Ginsburg has pointed out, the purpose was to require taxpayers who want to challenge their tax assessments to have to go through State procedures that have been established, which usually were the payment of the tax and the difference between the original purpose of the Tax Injunction Act and its proposed use by the State of Colorado is immense. Second, Mr. Minico said that he believed that absent this information, it effectively would make it impossible for the State of Colorado to be able to pursue use tax collection. But I believe it's interesting to note that the State of Colorado has not employed many of the measures that other States have employed to collect use taxes. So, for example, most States have a line on their income tax return that allows for the voluntary reporting of State taxes. Or you can have electronic reporting of State taxes, which in Colorado, 80 percent of Colorado taxpayers use electronic reporting, in which you can have a screen that requires that there be reporting of the tax before the screen proceeds to the next entry line. The State of Colorado is the only State in the country that is not participating in the streamlined sales tax project that is intended to simplify sales tax reporting and collection, so that these alternative measures certainly are available, have not been tried by Colorado, but instead what Colorado has selected. Ginsburg-Miller How successful are any of those methods? You can have as much notice as you want to the taxpayer, but most people are not going to pay these taxes if they don't think the government could find out that they were something in another State. In regard to what the State of Colorado does with its own taxpayers, its own residents, it's free to do so. For example, there have been other States that have employed a default percentage, that the default percentage applies unless there's affirmative reporting of an alternative number. My home State of Maine previously had that arrangement. So that it is not as if the State is bereft of any opportunity to enhance it. The use of the term impossible by Mr. Domenico, I think, is really a gross overstatement. I also want to point out that many of the cases that have been cited by Mr. Domenico are Anti-Injunction Act cases, Federal cases. For example, the case law that relates to anything that is intended to culminate in collection. The language of the Anti-Injunction Act and the Tax Injunction Act is not the same. The language of the Anti-Injunction Act refers to for the purpose of restraining and is not the same as enjoin, suspend, or restrain. Alitoson Could I just ask you to clarify your position on the State's alleged consent to this suit? Is it your argument that the Tax Injunction Act allows a Federal court to consider to entertain a case that would be otherwise barred by that act if the State consents? If that's your position, do you have authority for it? And have you raised this argument in your petition and in your brief? Verrilli, I believe we have. The — for example, if the State brings a collection action in Federal court, those cases have been allowed to continue in Federal court, even though it's an act of collection. The citation for that case is Jefferson v. Aker, Jefferson County v. Aker. I think it is most telling, though, Justice Alito, in regard to the comity issue. Thank you, counsel. The case is submitted.